STATE OF NORTH CAROLINA v. KENNETH AARON McNEILL

No. 560A89

(Filed 13 June 1990)

### 1. Jury § 7.1 (NCI3d) — murder — challenge to jury pool — racial discrimination

The trial court did not err in a felony murder prosecution by denying defendant's motion challenging the jury pool where there was no evidence that the statutory scheme set out in N.C.G.S. § 9-2 was not followed nor that the selection process failed for any other reason to be racially neutral. Although defendant contended that a gross disparity between the black population in the community at large and the number of black individuals in the jury pool was sufficient to create a rebuttable presumption of systematic discrimination, the small sample of forty jurors from the master list of jurors of Harnett County alone is insufficient to establish a systematic exclusion of blacks from the jury pool.

**Am Jur 2d, Jury §§ 173-176.**

### 2. Jury § 7.14 (NCI3d) — murder — peremptory challenge — only black person on jury challenged

There was no error in a felony murder prosecution from the trial court's denial of defendant's objection to the state's peremptory challenge of the only black person on the jury where the facts before the trial court provide plenary support for the conclusion that the challenge was for legitimate, racially neutral reasons in that this juror was acquainted with de-

fendant as well as potential witnesses in the case. The trial court had no reason to suspect the genuineness of the state's explanation supporting the dismissal of the juror and, even if defendant established a prima facie showing of discrimination, the state properly rebutted the presumption created by that showing.

**Am Jur 2d, Jury § 235.**

3. **Homicide § 20.1 (NCI3d) — murder — photograph of victim — admissible to establish identity of the victim — not prejudicial**
There was no error in a felony murder prosecution from the admission of a photograph of the victim and his brother where the photograph was offered to establish the identity of the victim even though the photograph had some emotional impact on the witness, the victim's daughter. The state has a right to prove all essential elements of the case, regardless of whether defendant is contesting each element, and the photograph here allowed the state to establish the identity of the victim and the fact that he was once alive. Defendant failed to show that the photograph was unduly inflammatory or that its admission was not proper.

**Am Jur 2d, Homicide § 289.**

4. **Criminal Law § 35 (NCI3d) — felony murder — evidence that offense committed by another — correctly excluded**
The trial court did not err in a prosecution for felony murder by excluding a cigar box which the victim's daughter had identified as being like the one in which her father had kept money where there was testimony that the cigar box had been obtained after breaking into a house and then sold or given to various parties until it came into the custody of officers. Evidence showing that someone other than defendant committed a crime must point directly to the guilt of some specific person and must be inconsistent with defendant's guilt. The cigar box here fails both prongs of the test.

**Am Jur 2d, Homicide § 296.**

5. **Homicide § 21.6 (NCI3d) — felony murder — evidence sufficient**
The trial court did not err in a prosecution for murder, armed robbery, and burglary by denying defendant's motion to dismiss where defendant was positively identified as having

STATE v. McNEILL

[326 N.C. 712 (1990)]

entered the victim's trailer sometime after 9:30 p.m. and before the Sheriff's Department was notified of the killing at 12:34 a.m.; the defendant's motive to rob the victim was established by facts indicating he had earlier attempted to borrow money for drinks or cocaine; defendant was found a few hours after the victim had been murdered in possession of cash, a packet of cocaine, and the victim's two wallets; defendant was unable to explain how he had come into possession of the victim's wallets or the cash with which he was found; and defendant had blood on his slacks when he was taken into custody within hours of the murder.

**Am Jur 2d, Homicide §§ 72, 442.**

**6. Appeal and Error § 32 (NCI4th); Homicide § 4.2 (NCI3d) — felony murder — felony judgment arrested orally — judgment remaining in record — corrected by appellate court — supervisory authority**

Where the trial judge in a felony murder prosecution orally arrested judgment in open court on the underlying felony but the record on appeal contained the judgment and commitment on both charges, the Supreme Court amended the commitment and judgment on the underlying felony in the exercise of its supervisory authority.

**Am Jur 2d, Appeal and Error § 268; Courts §§ 115-117.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by *Stanback, J.*, at the 28 August 1989 Criminal Session of Superior Court, HARNETT County, upon a jury verdict of guilty of murder in the first degree. Defendant's motion to bypass the Court of Appeals as to judgment for robbery with a dangerous weapon was allowed by the Supreme Court 29 December 1989. Heard in the Supreme Court 11 April 1990.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*James M. Johnson and Benjamin N. Thompson for defendant-appellant.*

STATE v. McNEILL

[326 N.C. 712 (1990)]

MARTIN, Justice.

Late in the evening of 27 January 1989, Henry Stephen Elliott was killed by a blow to the head while he was in his mobile home near Bunnlevel, North Carolina. The victim, who had a reputation for bootlegging, lived next door to the Nutgrass Inn, a tavern frequented by local residents of the area.

The state's evidence tends to show that on the day of the murder the defendant and Archie McLean, Jr. had worked together breaking up automobile transmissions, killing hogs, and making deliveries for McLean's father. At the end of the day, the defendant was paid $60.00 by the senior Mr. McLean for his day's work.

After work, the defendant and Archie McLean, Jr. went out together for the evening. They stopped twice at two different locations where the defendant purchased cocaine which the two took into some nearby woods and smoked. They then drove together to Shawtown near Lillington before returning to the senior McLean's home where defendant changed clothes and the younger McLean bathed. At defendant's urging, Archie McLean, Jr. attempted unsuccessfully to borrow $20.00 from his mother. The two men then left again and headed for the Nutgrass Inn. The defendant was dropped off at the Inn at about 9:25 p.m. while McLean went on to his girlfriend's house. Initially, the plan was for McLean to return for the defendant at about 10:30 p.m., but when Mr. McLean came back for the defendant at 10:20 p.m. he could not find him, so McLean left and went to his girlfriend's house where he stayed for the night.

The owner of the Nutgrass Inn, Ms. Flora Harris, testified at trial that she had known the defendant for approximately five years, having seen him at her Inn, at the victim's mobile home, and at another "juke joint" known as Larry's. Ms. Harris recalled that on the evening of the murder the defendant came into her establishment sometime after she had come to work, which had been between 9:30 p.m. and 10:00 p.m. Defendant bought a drink, went outside, came back in, and went outside again. During the evening, defendant bought one drink from Ms. Harris with his own money but had to borrow fifty cents from another customer to buy a second drink.

At some point, Ms. Harris went outside to use the bathroom and overheard the defendant attempting to borrow $20.00 from

another patron, Leonard Elliott. While she was still outside the Nutgrass Inn, Ms. Harris saw the defendant go into the back door of the victim's mobile home next door. A few minutes later she saw another man near the front door of the trailer but did not see him enter. She did not see the defendant leave the mobile home. Since the Nutgrass Inn closed at 11:30 p.m., Ms. Harris was able to testify that she had seen the defendant enter the victim's mobile home sometime after 9:30 p.m. when she had come to work but before 11:30 p.m. when the Inn was closed.

Additional testimony at the trial established that the victim's body was discovered in the early morning hours and that a number of citizens suspected the defendant of perpetrating the crime. A group of approximately six to ten individuals confronted the defendant at Larry's juke joint sometime around 3:00 a.m. and demanded that he empty his pockets. After removing some loose change from his pockets, the defendant ran but was caught by someone in the crowd. He then took some folding money and a pocketknife from his pockets and pulled a black wallet and a green wallet from his belt area. A $25.00 packet of cocaine was found in one of the wallets. Defendant had some bloodstains on his pants at that time.

Deputy Larry Munson of the Harnett County Sheriff's Department went to the victim's trailer at 1:16 a.m. where he found Mr. Elliott's body. At approximately 4:00 a.m., he went to Larry's place where he found the defendant surrounded by the individuals who had confronted him and a large crowd of on-lookers. There was money lying on the ground in front of the defendant and two wallets on the hood of a car. The deputy took the items and the defendant into custody and left the area. The wallets were later identified by the victim's children as belonging to their father.

On 17 April 1989, the Harnett County Grand Jury indicted the defendant for murder in the first degree of Henry Stephen Elliott, robbery with a dangerous weapon, and first-degree burglary of Mr. Elliott's premises. The case was tried at the 28 August 1989 criminal session of the Superior Court for Harnett County. At the close of the state's evidence, the defendant moved for a dismissal as to all charges. Defendant's motion was granted as to the first-degree burglary charge only. On 31 August 1989, the jury returned a verdict of guilty on the two remaining charges, and the court sentenced the defendant to life in prison for murder in the first degree and twenty-five years for robbery with a dangerous

weapon. As the murder conviction was obtained on the felony murder theory, the court arrested judgment on the robbery charge, which was the underlying felony supporting the murder conviction.

[1] Defendant raises five questions on this appeal. In his first assignment of error, defendant contends that the trial court erred in denying his pretrial motion challenging the jury pool. Counsel for the defense made an oral motion challenging the entire pool on the grounds that it contained a disproportionately small number of black persons. The next morning the motion was argued. During that argument, defense counsel stated that out of a forty member jury pool, only two individuals, or 5%, were black. Noting that statistics from the 1980 Census Bureau indicate that the adult population of Harnett County is 23% black, defense counsel asserted that the 18% discrepancy between the overall black population in the county and the composition of the jury pool raised a prima facie case of systematic exclusion of blacks from the jury pool. During the hearing, defense counsel correctly noted that a prima facie case is generally established by satisfying a three-prong test showing that (1) the group allegedly excluded from the jury pool is a cognizable group; (2) the representation of that cognizable group in the jury pool is not fair and reasonable as compared to the number of such persons within the community; and (3) the underrepresentation of the group is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 58 L. Ed. 2d 579 (1979). *See also State v. McCoy*, 320 N.C. 581, 359 S.E.2d 764 (1987); *State v. Price*, 301 N.C. 437, 272 S.E.2d 103 (1980).

While there is no evidence on record other than defense counsel's own assertions regarding the racial composition of the jury, nor any reference at all to the race of the defendant, this Court will assume arguendo that defendant is black and that defense counsel's representations regarding the racial composition of the jury pool are correct. In its brief to this Court, the state does not dispute that the first two prongs of the test set out in *Duren* for establishing a prima facie case have been satisfied. The dispute is whether the defendant satisfied the third prong of the test by demonstrating that the disproportionately low number of black people in the jury pool was the result of systematic exclusion of that group in the compiling of the jury pool. It was the defendant's position at the time of the hearing on the motion as well as on this appeal that the gross disparity between the black population in the community

STATE v. McNEILL

[326 N.C. 712 (1990)]

at large and the number of black individuals in the jury pool was sufficient evidence, in and of itself, to create a rebuttable presumption that the disproportionately low representation of blacks in the jury pool was the result of systematic discrimination. Believing that the prima facie case had been thus established, the defendant asserts that the state then had the burden to go forward and show that there had not been a systematic exclusion.

The law in this area is clear. A criminal defendant has a constitutional right to be tried by a jury of his peers. U.S. Const. amend. VI; N.C. Const. art. I, §§ 24 and 26. Included in this right is the guarantee that members of his own race have not been systematically and arbitrarily excluded from the jury pool which is to decide the defendant's guilt or innocence. *State v. McLaughlin*, 323 N.C. 68, 372 S.E.2d 49 (1988); *State v. Wilson*, 262 N.C. 419, 137 S.E.2d 109 (1964). The test articulated by the United States Supreme Court in *Duren* determines when a disproportionate representation of defendant's race in a jury pool is impermissible. Defendant must prove the systematic or arbitrary exclusion of members of his race from the jury pool. We hold that defendant has failed to establish a prima facie case of unfair systematic exclusion of a cognizable group from the jury pool. *State v. Harbison*, 293 N.C. 474, 238 S.E.2d 449 (1977). Defendant has failed to show that the procedure in establishing the jury pool was not racially neutral or that there is a history of relatively few blacks serving on Harnett County juries. The small sample of forty jurors from the master list of jurors of Harnett County alone is insufficient to establish a systematic exclusion of blacks from the jury pool.

In North Carolina, N.C.G.S. § 9-2 controls the selection process of the jury pool. That statute has been expressly recognized as providing "a system for objective selection of veniremen." *State v. Avery*, 299 N.C. 126, 131, 261 S.E.2d 803, 807 (1980). In the case before us, there is no evidence that the statutory scheme set out in N.C.G.S. § 9-2 was not followed nor that the selection process failed for any other reason to be racially neutral. Defendant's first assignment of error is without merit.

[2] Defendant's next assignment of error concerns the trial court's denial of his objection to the state's peremptory challenge of the only black person on the jury. Again, it is of concern that the record does not reflect the race of excluded juror nor the race of her replacement or the race of the remainder of the jurors.

However, following his objection to the state's exclusion of this juror, defense counsel stated without contradiction from the state that the juror was the only black person in the box. The remainder of the discussion which followed defense counsel's objection creates the inference that the replacing juror was not black. Because the voir dire of the jury was not transcribed for the record, it is difficult to discern what actually occurred. Nonetheless, statements of counsel on the record indicate that the juror, Mrs. McLean, had asserted during the voir dire that she knew the defendant although she had not seen him for five years and that she might also know some of the witnesses in the case. It is the defendant's position that the exclusion of the only black juror from the jury in this case was a violation of the defendant's right to equal protection as recognized in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). The teaching of *Batson* is now familiar learning to the Bench and Bar.

Assuming without deciding that the defendant established a prima facie case of discrimination based solely on the fact that the prosecutor's use of a peremptory challenge resulted in the removal of the only black person in an otherwise all white jury, the facts before the trial court provide plenary support for the conclusion that the challenge was for legitimate, racially neutral reasons. In view of the fact that this juror was acquainted with the defendant as well as potential witnesses in the case, the state has satisfied its burden by coming forward with a neutral explanation for its challenge of her. Moreover, we read the trial court's comment that the defense had failed to show a pattern of discrimination on the part of the state as reflecting the court's awareness that such a showing might have provided some evidence of the state's lack of sincerity in coming forward with a rational explanation for its peremptory challenge. *See State v. Jackson*, 322 N.C. 251, 368 S.E.2d 838 (1988). However, there being no showing of a history of discriminatory practice on behalf of the district attorney, the trial court had no reason to suspect the genuineness of the state's explanation supporting the dismissal of this juror. We hold that even if the defendant can be said to have established a prima facie showing of discrimination in the challenge of this juror, the state properly rebutted the presumption created by that showing in accord with the standard set forth in *Batson*.

[3] Defendant next contends that the court erred in admitting a photograph of the victim and his brother into evidence. During

the testimony of the victim's daughter, the prosecutor offered the photograph into evidence as a means of establishing the identity of the victim. Defense counsel objected and argued that because the defense was not contesting the victim's identity nor the fact that he was deceased at the time of the trial, the photograph had no probative value. Moreover, the photograph had some emotional impact on the witness, and defense counsel objected to its admission because of the inflammatory nature of the photograph as well as the daughter's reaction to it. The defendant contends that the prejudicial effect outweighed any probative value of the photograph and that its admission constituted reversible error.

The state, however, correctly points out that it has a right to prove all essential elements of the case, regardless of whether the defendant is contesting each element or not. *State v. Hunt*, 325 N.C. 187, 381 S.E.2d 453 (1989); *State v. Elkerson*, 304 N.C. 658, 285 S.E.2d 784 (1982); *State v. Lester*, 294 N.C. 220, 240 S.E.2d 391 (1978). The responsibility of weighing the probative value of proffered evidence against its prejudicial effect rests within the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse of that discretion. *See State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986); *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986). In this case, the photograph allowed the state to establish the identity of the victim and the fact that he was once alive. Defendant has failed to show that the photograph was unduly inflammatory or that its admission was not proper. Defendant's third assignment of error is without merit.

[4] Defendant's next question also concerns an evidentiary ruling of the trial court. At trial, Lieutenant Atkins of the Harnett County Sheriff's Department identified a Tampa Nugget cigar box which he had received from Charles Elliott. Following an objection to defense counsel's line of questioning concerning the origins of the box, the jury was excused and the witness was allowed to elaborate out of the hearing of the jury concerning his understanding of how Charles Elliott had obtained the cigar box. Lieutenant Atkins stated that on the morning the victim was killed, Laverne Smith gave the box, which at that time was full of quarters, to Larry McNeill who sold it for $50.00 to Charles Elliott's son, Charles McKoy. It was the lieutenant's understanding that Laverne Smith had obtained possession of the box after he had broken into a house near the business district of Bunnlevel. The victim's trailer

was located in an outlying area known as the Sandhills of Bunnlevel. The victim's daughter had previously identified the box as being like one which her father had owned. Charles McKoy was put on the stand and also identified the box as the one he had obtained at Larry McNeill's house.

Defendant correctly asserts that since the box was identified by three witnesses, a proper foundation had been laid for its admission. Although the state contends that the daughter's identification of the box was ambivalent, we find that her testimony that the box was substantially similar to the box in which her father had kept money at his trailer was sufficient to identify it for admission as evidence. *State v. Joyner*, 301 N.C. 18, 269 S.E.2d 125 (1980) (noting that it is not necessary that the witness positively identify the object in order for a proper foundation to be laid and that the lack of positive identification goes to the weight of the witnesses' testimony, not to the admissibility of the object).

Defendant is also correct in his assertion that any properly identified object which has a relevant connection with a case is admissible into evidence. 1 Brandis on North Carolina Evidence § 118 (1988). However, where the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt. *State v. Brewer*, 325 N.C. 550, 386 S.E.2d 569 (1989); *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987). *See generally* 1 Brandis on North Carolina Evidence § 93 (1988). The cigar box proffered by the defendant in this case fails both prongs of this test, and hence the trial court ruled correctly that it should not have been admitted into evidence.

Regarding the first prong of the test for relevancy, evidence produced during the voir dire examination of Lieutenant Atkins indicated that the box as identified was taken from a house located within the town of Bunnlevel. The victim was murdered in a trailer, not a house, which was located in the Sandhills section outside of Bunnlevel, not in the town itself. Consequently, even if it is assumed that Laverne Smith had stolen this box, his possession of it does not place him at the scene of the murder that night. Moreover, regarding the second prong of the relevancy test, Laverne Smith's possession of this box on the night of the murder is not

inconsistent with the defendant's own guilt. The Harnett County Sheriff's Department was contacted about the victim's death at 12:34 a.m., and the defendant was not confronted by the citizen's group until sometime around 2:00 a.m. or 3:00 a.m. Clearly the defendant had ample opportunity to have sold the box to someone else or to have otherwise disposed of it prior to having been taken into custody. The fact that the box ended up in Laverne Smith's possession is not inconsistent with the defendant's armed robbery and murder of the victim. For the reasons set forth above, defendant's Exhibit 15, the Tampa Nugget cigar box, was properly excluded from evidence.

[5] Defendant's final contention is that there was insufficient evidence to carry the case to the jury. As a result, the defendant asserts that the trial court erred in failing to grant his motion for dismissal made at the close of all the evidence and renewed after the verdict but before entry of judgment. In reviewing a motion to dismiss, the court is to consider the evidence in the light most favorable to the state, and the state is entitled to every reasonable inference to be drawn therefrom. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984); *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). In this case, the defendant was positively identified as having entered the back door of the victim's trailer sometime after 9:30 p.m. and before the Sheriff's Department was notified of the killing at 12:34 a.m. The defendant's motive to rob the victim was established by facts indicating that he was attempting to borrow money earlier in the evening for drinks or cocaine. Only a few hours later, after the victim had been murdered, the defendant was found in possession of cash and a packet of cocaine as well as the victim's two wallets. The defendant was unable to explain how he had come into possession of the victim's wallets or the cash with which he was found. He had blood on his slacks when he was taken into custody by the Sheriff's Department within hours of the murder. Defendant relies heavily on the fact that the evidence against him is largely circumstantial, but we note that the test of sufficiency for the purposes of reviewing a motion to dismiss is the same regardless of whether the evidence is direct or circumstantial. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). We hold that the evidence against defendant when viewed in the light most favorable to the state would permit a reasonable juror to conclude that the defendant committed this murder. Defendant's motion to dismiss was properly denied.

[6] In concluding, we note that the transcript of this case reflects that after sentencing the defendant on the murder charge, the trial judge also sentenced him to twenty-five years in prison on the armed robbery charge. The record shows that at that point, the trial judge arrested judgment orally in open court on the armed robbery conviction as it constituted the underlying felony supporting the felony murder charge. *See State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981); *State v. Squire*, 292 N.C. 494, 234 S.E.2d 563 (1977); *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666 (1972). Despite the arrest of judgment, however, the record on appeal contains judgment and commitments on both charges. In the exercise of our supervisory authority, we hereby amend the judgment and commitment on the armed robbery charge, File # 89-CRS-1032, Harnett County, in this cause, by adding the following to said judgment: "This judgment and commitment was arrested by the presiding judge 31 August 1989." The Clerk of this Court shall direct the Clerk of Superior Court, Harnett County, to issue a corrected judgment and commitment and to forward a certified copy of the same to the Department of Correction.

No error.