STATE OF NORTH CAROLINA v. TIMOTHY AUSTIN

No. 9211SC105

(Filed 17 August 1993)

1. **Jury § 248 (NCI4th) — peremptory challenge of only black juror — no violation of constitutional right to trial by jury of peers — showing of race neutral grounds for exclusion**

   The trial court did not err by failing to find that the State's peremptory challenge of one black juror from an otherwise white venire violated defendant's constitutional right to a trial by a jury of his peers, since, even if defendant made out a *prima facie* case of schematic exclusion, no constitutional violation was present due to the State's rebuttal of the presumption by articulating race-neutral grounds for excusing the potential juror, including the juror's acquaintance with defense

counsel, friendship with defendant, and desire not to serve on the jury.

**Am Jur 2d, Jury § 235.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

2. **Jury § 248 (NCI4th) — black defendant's exclusion of white jurors — showing of race-neutral grounds required by court — no error**

The trial court did not place an unfair burden on defendant by requiring him to articulate race-neutral grounds for excusing white jurors from the jury, since the court apparently requested specific reasons as an exercise in caution due to a prior deadlocked jury which resulted in a mistrial in the same case; the trial court has authority to conduct such an inquiry when the State has established a *prima facie* case of discrimination; and, in any event, the trial court's inquiry did not result in any prejudice to defendant, as the court sustained all six of defendant's peremptory challenges, and the jury's composition was thus unaffected.

**Am Jur 2d, Jury § 235.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

3. **Evidence and Witnesses § 621 (NCI4th) — jacket linked to defendant — untimeliness of motion to suppress**

In a prosecution of defendant for robbery with a dangerous weapon, the trial court did not err in denying, on the basis of untimeliness, defendant's motion to suppress an in-court identification and the use of a jacket recovered from defendant's god-sister's home as evidence, since defendant did not make his motion to suppress prior to trial; defendant had sufficient time to make the motion prior to trial and ample notice of the State's intention to use both the jacket and the in-court identification as evidence; and the same evidence was introduced at defendant's first trial. N.C.G.S. § 15A-975.

**Am Jur 2d, Trial § 165.**

**Modern status of rules as to use of motion in limine or similar preliminary motion to secure exclusion of prejudicial evidence or reference to prejudicial matters. 63 ALR3d 311.**

**4. Criminal Law § 1226 (NCI4th) — sentence — failure to find intoxication as mitigating factor — no error**

The trial court did not err in failing to find as a mitigating factor for armed robbery that defendant was suffering from intoxication, a condition that was insufficient to constitute a defense but significantly reduced his culpability, since the evidence of defendant's intoxication showed him to be under the influence of alcohol after the time of the crime but not at the time of the crime.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from judgment entered 8 November 1991 by Judge Anthony M. Brannon in Johnston County Superior Court. Heard in the Court of Appeals 3 March 1993.

*Attorney General Lacy H. Thornburg, by Associate Attorney General William W. Finlator, Jr., for the State.*

*James R. Levinson for defendant appellant.*

COZORT, Judge.

Defendant Timothy Austin was found guilty of robbery with a dangerous weapon and sentenced to serve twenty years in prison. Defendant asserts the following as error on appeal: (1) the trial court's failure to find that the State's peremptory challenge of one black juror violated his constitutional right to a trial by a jury of his peers; (2) the trial court's requirement that defendant explain his peremptory jury challenges; (3) the trial court's denial of defendant's motions to suppress the use of certain evidence, and of an in-court identification made by a State's witness; and (4) the trial court's finding that the aggravating factor outweighed the mitigating factor, thereby justifying a sentence greater than the presumptive. We conclude the defendant received a fair trial free from prejudicial error.

The State's evidence presented at trial included the testimony of Nancy Alford, a clerk at the "Dash In," a convenience store located on Route 301 near Smithfield, North Carolina. Ms. Alford testified that on 16 November 1990, at approximately 8:00 p.m., she was working behind the counter at the convenience store, when a black male entered the premises. Ms. Alford described the man as being approximately thirty years old, at least six feet tall, and

nearly 220 pounds in weight. He had a "flat-top" haircut, and wore white high-top tennis shoes, stone-washed blue jeans, and a loose blue Champion jacket with grey sleeves. The man brandished a knife in his right hand, and said, "If you don't give me the money, I'll come across this counter and cut your throat." Ms. Alford indicated the knife had a short wooden handle and a little curved blade. She handed the robber approximately $500.00 in cash. The perpetrator fled the scene, and Ms. Alford telephoned the police.

Based on a description given to him by Ms. Alford, Lieutenant Timothy E. Holmes of the Smithfield Police Department began questioning residents of the nearby Johnson Court Apartments to identify possible suspects. Lieutenant Holmes spoke with Ms. Annie Brockington, who said she had talked with the defendant earlier in the day, and he had been wearing clothes similar to what the robber had been wearing. Ms. Brockington accompanied Holmes to the police station, where she viewed the videotape taken from the convenience store's surveillance monitor. After watching the videotape, Ms. Brockington identified defendant as being the robber.

Lieutenant Holmes, with the assistance of other officers, located the defendant watching television in the apartment of Ms. Deborah Russell, his god-sister. Defendant was wearing khaki pants, a blue shirt, and white deck shoes. Each officer testified he could smell alcohol on the defendant's breath. The officers discovered a medium-sized Champion jacket, similar to the one worn by the robber, hanging in Ms. Russell's upstairs closet.

The police officers escorted defendant to the police station, where he was held in a squad room and told he would be photographed for a photo line-up. No photographic line-up was ever conducted. Ms. Alford, the store clerk, went to the station to view a possible suspect who was being detained. Ms. Alford initially viewed the defendant through a window, but at the defendant's request, she was permitted to go into the room to get a closer look. Ms. Alford then indicated to police that defendant was the man who had robbed her. At the time of his arrest, defendant had on his person $226.00 in cash. He explained to police he had cashed his paycheck for $56.80 earlier in the day, and then gambled with the money to win $185.00 in cash.

Defendant's evidence consisted of testimony by defendant's mother, god-sister, other relatives and several friends. The testimony

STATE v. AUSTIN

[111 N.C. App. 590 (1993)]

tended to show that defendant was at a friend's home until after the time of the robbery, and then went to his god-sister's apartment to watch a ball game. Defendant's evidence also indicated that he had a reputation in the community for honesty and good character.

The jury found defendant guilty of robbery with a dangerous weapon. The trial court sentenced him to twenty years in prison, a sentence greater than the presumptive.

[1] Defendant first argues on appeal that the trial court erred by failing to find that the State's peremptory challenge of one black juror from an otherwise white venire violated defendant's constitutional right to a trial by a jury of his peers. Both our federal and state constitutions prohibit the State from peremptorily challenging prospective jurors solely on the basis of race. *See Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69 (1986) and *State v. Smith*, 328 N.C. 99, 119, 400 S.E.2d 712, 723 (1991). To prove a *prima facie* case of purposeful discrimination under *Batson*, a defendant must show (1) he or she is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of defendant's race from the venire; (2) he or she is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate"; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used such a practice to exclude veniremen from the jury on account of race. *Batson*, 476 U.S. at 96, 90 L.Ed.2d at 87-88. If the defendant meets a prima facie case of purposeful discrimination, then the State must rebut the presumption by articulating a "clear and reasonably specific" race-neutral explanation for the basis of the peremptory challenge. *Smith*, 328 N.C. at 120, 400 S.E.2d at 723.

In the present case, only one black venireman was selected for potential jury service, Mr. Errol S. Chisholm. When the State sought to exercise a peremptory challenge to excuse Mr. Chisholm, the defendant objected on *Batson* grounds. This case is similar to *State v. McNeill*, 326 N.C. 712, 719, 392 S.E.2d 78, 82 (1990), where the defendant argued "that the exclusion of the only black juror from the jury in this case was a violation of the defendant's right to equal protection as recognized in *Batson* . . . ." Our Supreme Court in *McNeill* stated:

Assuming without deciding that the defendant established a prima facie case of discrimination based solely on the fact

that the prosecutor's use of a peremptory challenge resulted in the removal of the only black person in an otherwise all white jury, the facts before the trial court provide plenary support for the conclusion that the challenge was for legitimate, racially neutral reasons. . . . However, there being no showing of a history of discriminatory practice on behalf of the district attorney, the trial court had no reason to suspect the genuineness of the state's explanation supporting the dismissal of this juror. We hold that even if the defendant can be said to have established a prima facie showing of discrimination in the challenge of this juror, the state properly rebutted the presumption created by that showing in accord with the standard set forth in *Batson.*

*Id.* As in *McNeill,* we decline to decide whether the exclusion of one black juror constitutes a schematic exclusion which would trigger the protections of *Batson.* Assuming, however, that such exclusion establishes a pattern of discrimination, we agree with the trial court in finding no *Batson* violation. The trial court noted in part:

And the Court further finds that all of the facts and circumstances in this case including, but not limited to, the voir dire examination of Mr. Chisolm, [*sic*] shows that the peremptory excusal of Mr. Chisolm [*sic*] is not based at all on race, but rather on what has been acknowledged here was Mr. Chisolm's [*sic*] set of responses to the questions asked, namely that he knew of the defense attorney, knew the defense attorney's family, that he knew the defendant, regarded him as a friend, in fact I recall the phrase, "good friend" for six or seven years. He indicated that he knew personally, my recollection is that he'd been in the home of some of the defendant's blood kin relatives, who according to what the defendant's lawyer apparently told the solicitor before trial would be witnesses in this case. And further, it was most obvious to the Court in the interest of Mr. Chisolm, [*sic*] that when he said he did not desire to serve on the jury, he meant clearly that he did not desire to serve on this particular jury because of his acquaintanceship with the defendant's family. And while to be sure that that would be a basis of excusal for cause, it is a factor, a neutral factor, that any trial order may consider in formulating their decision of whether or not to peremptorily excuse a given person or not.

STATE v. AUSTIN

[111 N.C. App. 590 (1993)]

. . . The State independently from the law in *Batson* has shown from Mr. Chisolm's [*sic*] own responses absolutely neutral explanations for their peremptory excusal of Mr. Chisolm [*sic*] as a juror in this case and therefore the State is allowed that particular peremptory excusal.

We therefore hold that, assuming the defendant made out a prima facie case of schematic exclusion, no *Batson* violation was present due to the State's rebuttal of the presumption by articulating race-neutral grounds for excusing Mr. Chisholm.

[2] Defendant's second issue also deals with jury selection. Defendant claims the trial court placed an unfair burden on him by requiring him to articulate race-neutral grounds for excusing white jurors from the jury. During jury selection, the defendant peremptorily challenged six white members of the venire. In the jury's absence, the trial court asked defense counsel to state the reason for excusing the white jurors, stating, "It's my job to protect jurors under the law. They have rights separate and apart from the other folks involved in the case." The defendant claims this procedure caused him to suffer undue prejudice which warrants the order of a new trial. We disagree.

Recently, the United States Supreme Court addressed the question of whether the Constitution prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges. *See Georgia v. McCollum*, 505 U.S. ---, 120 L.Ed.2d 33 (1992). In resolving this issue, also known as "reverse *Batson*," the Court explained:

Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination.

\* \* \* \*

Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice—our citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal.

STATE v. AUSTIN

[111 N.C. App. 590 (1993)]

*McCollum*, 505 U.S. at ---, 120 L.Ed.2d at 44-45. With respect to whether the interests of *Batson* must give way to the rights of criminal defendants, the *McCollum* Court stated:

> [P]eremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.
>
> * * * *
>
> We do not believe that this decision will undermine the contribution of the peremptory challenge to the administration of justice. Nonetheless, "if race stereotypes are the price for acceptance of a jury panel as fair," we reaffirm today that such a "price is too high to meet the standard of the Constitution."

*Id.* at ---, 120 L.Ed.2d at 50 (citations omitted). The Court went on to hold that "[T]he Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." *Id.* at ---, 120 L.Ed.2d at 51.

In the present case, the record indicates that the State did not initiate the "reverse-*Batson*" issue concerning the defendant's peremptory challenges. Rather, the trial judge raised the issue. The trial court apparently requested specific race-neutral reasons for the defendant's peremptory challenges of the white veniremen as an exercise in caution due to a prior deadlocked jury which resulted in a mistrial in the same case. Under these circumstances, it is unclear whether *McCollum* applies directly to this case, where the judge, not the State, raises the issue. The reasoning in *McCollum* is instructive nonetheless. Clearly, after *McCollum*, a trial court is now vested with the authority to conduct such an inquiry when the State has established a prima facie case of discrimination. The burden would then shift to the defendant to articulate race-neutral grounds for peremptory excusals. We cannot say that the State presented a prima facie case of discrimination in the case at hand.

However, even without the trial court's being able to rely on *McCollum* at the time of trial, we find the trial court's inquiry did not result in any prejudice to the defendant. The trial court sustained all six of the defendant's peremptory challenges, and the jury's composition was thus unaffected. Accordingly, defendant's second assignment of error is overruled.

[3] Next, defendant contends the trial court erred by denying his motion to suppress the use of the Champion jacket recovered at defendant's god-sister's home as evidence. Defendant also disputes the denial of his motion to suppress the in-court identification of Ms. Alford, the store clerk. Originally, the trial court denied the motions by indicating that he interpreted N.C. Gen. Stat. § 15A-975(b) (1988) to require a written motion to suppress. Later, the trial court denied the defendant's motions because of untimeliness.

Generally, motions to suppress must be made "prior to trial." N.C. Gen. Stat. § 15A-975(a) (1988); *State v. Tate*, 300 N.C. 180, 182-83, 265 S.E.2d 223, 225 (1980). A defendant may move to suppress evidence once trial proceedings have commenced (1) if he did not have a "reasonable opportunity to make the motion before trial," or (2) if the State has not given the defendant "sufficient advance notice of its intention to use the evidence," or (3) "when additional facts are discovered after a pre-trial motion has been denied that could not have been discovered with reasonable diligence before." *State v. Simmons*, 59 N.C. App. 287, 289, 296 S.E.2d 805, 807 (1982), *cert. denied*, 307 N.C. 701, 301 S.E.2d 395 (1983).

The record reflects that the defendant had both sufficient time to make his motions prior to trial and ample notice of the State's intention to use both the jacket and the in-court identification as evidence. Especially in light of defendant's first trial where the same evidence was introduced, we find the trial court did not err in denying defendant's motions to suppress.

[4] Finally, defendant argues the trial court abused its discretion in imposing a sentence greater than the presumptive sentence for robbery with a dangerous weapon. At sentencing, the trial court found as a mitigating factor that the defendant was a person of good character. As an aggravating factor, the trial court found that the defendant had a prior conviction punishable by more than 60 days' confinement. Defendant argues that the trial court erred by failing to find as a mitigating factor that he was suffering from intoxication, a condition that was insufficient to constitute a defense

CLAY v. EMPLOYMENT SECURITY COMM.

[111 N.C. App. 599 (1993)]

but significantly reduced his culpability. Defendant therefore submits that the trial court erred by finding the factor in aggravation outweighed the factor in mitigation.

We have reviewed the evidence presented and conclude the trial court did not err in failing to find the additional factor in mitigation. The evidence of defendant's intoxication showed him to be under the influence of alcohol after the time of the crime. Ms. Alford testified she did not detect the odor of alcohol on defendant at the time of the robbery, despite being close enough to touch him. Defendant's intoxication was not proved by such manifestly credible and uncontroverted evidence that no reasonable inferences to the contrary could be drawn. *See State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1985). Furthermore, the trial court did not err in imposing a sentence greater than the presumptive. It is well-settled that the weight given to aggravating and mitigating factors is within the sound discretion of the trial judge, whose decision will not be disturbed absent an abuse of discretion. *State v. Teeter*, 85 N.C. App. 624, 355 S.E.2d 804, *disc. review denied and appeal dismissed*, 320 N.C. 175, 358 S.E.2d 67 (1987). We do not discern an abuse of discretion in the present case.

No error.

Judges EAGLES and WYNN concur.