STATE OF NORTH CAROLINA v. THOMAS EUGENE DEGREE

No. 9327SC86

(Filed 19 April 1994)

1. **Jury § 248 (NCI4th)— peremptory challenges—no use for racially discriminatory reason**

   The trial court did not err in finding that the prosecutor did not exercise his peremptory challenges for a racially discriminatory reason in the selection of the petit jury where the prosecutor peremptorily challenged one black man because he was young and unmarried and he peremptorily challenged one black woman because she had a son who was to be involved in a court proceeding the next day, and she had tried to have herself removed from the jury.

   **Am Jur 2d, Jury § 235.**

   **Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

2. **Criminal Law § 530 (NCI4th)— juror reading newspaper—article about defendant—no mistrial**

   The trial court did not err in failing to declare a mistrial where a juror allegedly read a newspaper during an overnight recess which revealed that defendant may have been HIV positive, since the trial court examined the jurors and had the opportunity to observe their demeanor and their responses; and it was reasonable for the court to conclude that the juror did not read the article and had formed no opinion that would jeopardize defendant's right to a fair trial.

   **Am Jur 2d, Trial §§ 1081, 1082.**

STATE v. DEGREE

[114 N.C. App. 385 (1994)]

**Juror's reading of newspaper account of trial in state criminal case during its progress as ground for mistrial, new trial, or reversal. 46 ALR4th 11.**

Appeal by defendant from judgment entered 24 June 1992 by Judge C. Walter Allen in Cleveland County Superior Court. Heard in the Court of Appeals 6 October 1993.

The defendant was indicted on 16 December 1991 for the alleged rape and kidnapping of Carol Denise Littlejohn. The evidence presented by the State tended to show that on 19 November 1991 the defendant, who was acquainted with the victim through their employment, came to her home. After threatening to kill her, he forced her into his car and instructed his companion to proceed to a remote location in Cleveland County. The victim testified that he forced her out of the automobile and raped her, then continued to another rural spot, where he raped her again. The defendant offered no evidence.

The jury returned verdicts of guilty of all charges. The court imposed sentences of life for the rape convictions and a sentence of nine years for the kidnapping conviction to be served at the expiration of the sentences in the former convictions. The defendant appeals those convictions.

*Attorney General Michael F. Easley, by Associate Attorney General John G. Barnwell, for the State.*

*Clinton C. Hicks for defendant-appellant.*

ORR, Judge.

The defendant argues two issues before this Court. First, he contends that the trial court erred in finding that the prosecutor did not exercise his peremptory challenges for a racially discriminatory reason in the selection of the petit jury; and second, that the trial court erred in failing to declare a mistrial when a juror read a newspaper during an overnight recess which revealed that the defendant may have been HIV positive. We reject these contentions for the reasons set forth below.

I.

[1] It is well established in North Carolina that the use of peremptory challenges on the basis of race is prohibited by both the

State and Federal constitutions. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986); *State v. Beach*, 333 N.C. 733, 430 S.E.2d 248 (1993). In *Batson*, the United States Supreme Court said that

> [t]o establish such a case, the defendant first must show that he is a member of a cognizable racial group, . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88 (citations omitted).

When a defendant has made a *prima facie* case of racial discrimination, the State must rebut it by showing racially neutral reasons for the exercise of peremptory challenges. "[A] prosecutor's racially neutral explanations for peremptory challenges must be 'clear and reasonably specific' and 'related to the particular case to be tried.'" *State v. Thomas*, 329 N.C. 423, 431, 407 S.E.2d 141, 147 (1991). Great deference is accorded "to the trial court's decision on the ultimate question of the prosecutor's discriminatory intent in peremptory challenges." *Id.* at 432, 407 S.E.2d at 147-48.

> Deference to the trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding will "largely turn on evaluation of credibility." . . . In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "particularly within a trial judge's province."

*Id.*, 407 S.E.2d at 148, quoting *Hernandez v. New York*, 500 U.S. 352, 114 L. Ed. 2d 395, 409 (1991).

In the instant case, the defendant raised *Batson* challenges following the exclusion of Jimmy Thompson and Dorothy Lowe, both African-American, from the panel. Beyond those facts, we have no further information in the record on the composition of the jury venire nor the total number of peremptory challenges that the prosecutor used.

Similarly, in *State v. McNeill*, 326 N.C. 712, 392 S.E.2d 78 (1990), there was no record of the jury selection process but only the defense counsel's reiteration of the *Batson* objection. In *McNeill*, the defendant contended that the exclusion of the only black juror from the jury amounted to a violation of defendant's equal protection rights under *Batson* and its progeny.

In response, the North Carolina Supreme Court stated:

Assuming without deciding that the defendant established a prima facie case of discrimination based solely on the fact that the prosecutor's use of a peremptory challenge resulted in the removal of the only black person in an otherwise all white jury, the facts before the trial court provide plenary support for the conclusion that the challenge was for legitimate, racially neutral reasons. . . . However, there being no showing of a history of discriminatory practice on behalf of the district attorney, the trial court had no reason to suspect the genuineness of the state's explanation supporting the dismissal of this juror. We hold that even if the defendant can be said to have established a prima facie showing of discrimination in the challenge of this juror, the state properly rebutted the presumption created by that showing in accord with the standard set forth in *Batson*.

*Id.* at 719, 392 S.E.2d at 82 (citation omitted).

We decline to address whether the defendant in the case at bar has made out a *prima facie* case of purposeful discrimination in the district attorney's use of peremptory challenges. Where the prosecutor offers racially neutral explanations for his peremptory challenges and the trial court finds them to be true and not pretextual, the issue of the *prima facie* case is moot. *Hernandez*, 500 U.S. 352, 114 L. Ed. 2d 395 (1991).

In the present case, the record reflects the following exchanges between defense counsel, the trial court, and the district attorney:

MR. HICKS: Mr. Thompson was discharged from the jury or released from the jury based on the government's use of its peremptory challenge. . . . [T]he District Attorney indicated that he discharged Mr. Thompson because of his age and he also discharged another young man who was white who he indicated was also, in his opinion, young—Mr. Elmore, . . . . [W]e believe, [the discharge of the juror] was the result of an attempt to make sure that no blacks served on this jury and that was supported, we contend, by the fact that Ms. Lowe was summarily discharged . . . .

THE COURT: What does the State say?

MR. YOUNG: Your Honor, as to Jimmy Thompson, looking at Jimmy Thompson and Jeffrey—Jimmy Thompson was the black man and Jeffrey Elmore, if the Court will recall, was juror number eleven, and the Court could find that he was obviously of the white race. That looking at both these men, they were young men and in the State's opinion, they were less than twenty-one years old. I did not inquire as to— specifically as to their age. I draw on my common sense. Also, neither one of these men . . . were married men. They were both single men, and the State—me, as the prosecutor, trying to find jurors who are representative of the community and who can be good, fair jurors, not based on the color but on such things as how old they are and what kind of family life do they have, and in particular, in this particular case, I felt that a young juror is not the best juror to sit on this case, and I think I made an example of that. At the same time I took the black man from the jury who was young, I took a young white—the only other what I considered to be young person under twenty-one—on the jury.

As to Ms. Lowe, Ms. Lowe earlier in the day tried to get off sitting on the jury and the Court denied it for cause, but I—I think when she tries to get off sitting on the jury herself that it falls easily into the realm of the proper use of a peremptory when she's got a son that is supposed to be in another court tomorrow and regardless of how serious this case may be, it's not as serious to her as to someone in her own family who has a court proceeding that they have to go to and that was the reason for the State—because I

was sitting here when she herself tried to get off sitting on the jury.

In surrebuttal, the defense counsel pointed out that a third juror was also young, at twenty-eight. The court responded that "I didn't think he looked as young as either of the other two young people. I really didn't. He — he's balding just slightly. Maybe premature. Obviously premature if he said he was twenty-eight." The court then found:

> The Court will find that there has been no purposeful discrimination by the State with regard to the peremptory challenge of Jimmy Thompson and also of Dorothy Lowe, the State having satisfied this Court with the explanation on the record as to its reasons for excusing Mrs. Lowe, as well as Mr. Thompson, and Mr. Vess, and again, also, Mr. Elmore. I believe Mr. Elmore and Mr. Vess both were young — apparently — appeared to be younger than the other jurors. . . .

The defendant challenges the credibility of the prosecutor's rebuttal, noting that some of the white veniremen who were also young were nevertheless included in the petit jury. We disagree.

In response to a similar argument in *Thomas*, our Supreme Court held that

> [t]his argument falls short of showing discrimination in a practice as complex as jury selection, which we have recognized is "more art than science" and in which "[r]arely will a single factor control the decision-making process." . . . Therefore, "[s]o long as the motive does not appear to be racial discrimination, the prosecutor may exercise peremptory challenges on the basis of 'legitimate "hunches" and past experience.'"

*Thomas* at 432, 407 S.E.2d at 147 (citations omitted).

Furthermore, in both *Hernandez* and *Thomas* the Court "specifically held that it would not overturn the trial court's finding on the issue of discriminatory intent 'unless convinced that its determination was clearly erroneous.'" *Thomas* at 432, 407 S.E.2d at 148, quoting *Hernandez*, 500 U.S. at ---, 114 L. Ed. 2d at 412. "It is not enough for defendant to raise the mere possibility of discrimination. 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* at 433, 407 S.E.2d at 148 (citations omitted). In

applying "this extremely deferential standard" to the facts in the case *sub judice*, we find that the trial court's ruling that no purposeful discrimination occurred should be upheld. The defendant's assignment of error is overruled.

## II.

[2] The defendant next calls our attention to the trial court's denial of a mistrial when it was discovered that during an overnight recess, a juror inadvertently read a portion of a newspaper article which reported that the defendant had Acquired Immune Deficiency Syndrome (AIDS). The ruling on a motion for a mistrial will be disturbed on appeal only if so clearly erroneous as to amount to a manifest abuse of discretion. *State v. Stroud*, 78 N.C. App. 599, 337 S.E.2d 873 (1985). We find that the trial court did not abuse his discretion, and accordingly overrule this assignment of error.

The defendant argues that the juror could not possibly have known that the article was about him without first learning that the defendant had AIDS, because the reference to the disease was in the first paragraph while the defendant's name did not appear until the third paragraph. He contends that this knowledge "is so inflammatory" that it inevitably tainted the juror's decision. However, we are not persuaded by this reasoning.

N.C. Gen. Stat. § 15A-1061 states in pertinent part: "The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case."

> Whether a mistrial should be granted pursuant to N.C. Gen Stat. § 15A-1061 (1988) is a matter which rests in the sound discretion of the trial judge. . . . Because such a ruling is within the trial judge's discretion, a mistrial is only appropriate where such serious procedural or other improprieties would make it impossible for a fair and impartial verdict to be rendered under the law.

*State v. Joyce*, 104 N.C. App. 558, 563, 410 S.E.2d 516, 519 (1991), *disc. review denied*, 331 N.C. 120, 414 S.E.2d 764 (1992) (citations omitted).

The record in the instant case reveals the following exchange between the Court and the jurors:

> THE COURT: I understand that there have been certain news accounts of this matter. Have any of you read anything about this case since it started?

> JUROR: It was in the Shelby Star, but I saw it about eight fifteen last night. I was reading and I saw the defendant's name and I quit.

> THE COURT: You didn't read it?

> JUROR: No, sir.

> THE COURT: All right, fine. You're Mr.—

> JUROR: Macks.

> THE COURT: Macks, right. All right, anybody else? Did any of you listen to the radio or was anything on t.v. or the radio concerning—

Upon determining that no other juror had been exposed to the media reports, the trial judge retired the jury to complete its deliberations. The jury returned about an hour later with the verdicts. The defendant moved for a mistrial at that time based on the juror's response to the article.

" 'The denial of a motion for a mistrial based on alleged misconduct affecting the jury is equivalent to a finding by the trial judge that prejudicial misconduct has not been shown.' " *State v. Jones*, 50 N.C. App. 263, 268, 273 S.E.2d 327, 330, *cert. denied*, 302 N.C. 400, 279 S.E.2d 354 (1981). In *Jones*, inadmissible evidence concerning prior convictions of the defendant was included in a newspaper article during the trial. Three jurors read the article. In finding that there was no abuse of discretion, this Court held that:

> The exposure of jurors to news media reports during trial has been a very real problem for a long time. . . . The ever-widening coverage by the press, radio, and television is likely to bring the problem before the courts with increasing frequency. The problem is primarily one for the trial judge, who must weigh all the circumstances in determining in his sound judicial discretion whether the defendant's right to a fair trial has

been violated when information or evidence reaches the jury which would not be admissible at trial.

*Id.* at 268, 273 S.E.2d at 330 (citations omitted).

Our review of the record indicates that the trial court in the instant case examined the jurors and had the opportunity to observe their demeanor and their responses. It was reasonable to conclude that juror number two, Mr. Macks, did not read the article and had formed no opinion that would jeopardize the defendant's right to a fair trial. We therefore conclude that there was no abuse of discretion in the decision of the trial judge to deny the defendant's motion for a mistrial.

No error.

Judges EAGLES and GREENE concur.